# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GARY CADDELL, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | _____ |
| LINCOLN LIFE ASSURANCE ) | |
| COMPANY OF BOSTON, ) | |
| ) | |
| DEFENDANT. ) | |
| ) | |

## COMPLAINT

Plaintiff Gary Caddell ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Lincoln Life Assurance Company of Boston ("Lincoln") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Restore Management Company, LLC. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

1

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policies sponsored by Restore Management Company, LLC.

2. The Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including long-term disability benefits under policies issued or administered and underwritten by Lincoln Life.

3. Plaintiff seeks such benefits together with any other disability-related benefits his plan may provide based on the conditions documented in his medical records. These conditions include degenerative disc degeneration L4-5 disc herniation, s/p L5-S1 discectomy with hemilaminectomy defect, lumbar radiculopathy, lumbosacral spondylosis, osteoarthritis spinal facet joints, osteoarthritis right knee, polyarthritis, cervical radiculopathy C2-C7, left shoulder rotator cuff tendinitis, left shoulder labral tear, left shoulder impingement, chronic pain, fatigue and malaise, benign prostate hypertrophy, vitamin D deficiency, essential tremor, and other problems.

## JURISDICTION

4. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

7. Plaintiff Gary Caddell, a resident and citizen of Jefferson County, Alabama, is a participant in the Plan and thus entitled to benefits available thereunder.

8. Defendant Lincoln Life Assurance Company of Boston ("Lincoln Life") is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9. Lincoln Life is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

10. One of Lincoln Life's designated agent for service of process is:

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

11. Lincoln Life is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

12. Lincoln Life is an entity providing services to The Plans at issue.

13. Lincoln Life is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

14. The Restore Management Company, LLC long term disability ("LTD") plan is funded entirely by a long-term group insurance policy sold by Lincoln Life, the company which also underwrote this group policy.

15. This group policy was purchased by Plaintiff's employer to confer certain benefits upon Plaintiff and other employees.

16. As a result, these policies qualify as employee welfare benefit plans as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plans as that term is used in 29 U.S.C. § 1132.

17. Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff is "disabled" as this Plan defines that term, which is as follows:

> "Disability" or "Disabled", with respect to Long Term Disability, means:
>
> 1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:
>
>    i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
>    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

18. The part of the disability definition applicable to Plaintiff in this case is that which relates to "Any Occupation," which the policy defines as follows:

> "Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

19. There are no Plan documents made available indicating that Lincoln Life has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred for this Plan.

## **LINCOLN LIFE'S LIABILITY**

20. Plaintiff Gary Caddell has a long history of back issues. He has been diagnosed going back to 1990 as having a history of lumbar disc disease with radicular symptoms. He treated regularly for these issues and engaged in regular exercises, but still he was considered for a steroid block back then.

21. Between 1990 and 2017 when Plaintiff's body forced him to stop

5

working, Plaintiff was consistently treated for back pain and related issues.

22. MRI imaging throughout that time confirmed a disc herniation at L5-S1 and consistent pain leading to the assignment of specific limitations by his physicians as to the amount of force he could safely exert.

23. Records also document pain extending into his legs. In fact, in 2009 Plaintiff underwent surgery for his L5-S1 disk herniation, which by then was causing or contributing to muscle spasms and pain continuing to extend into his left leg. Lifting and other exertional limitations continued.

24. Records as of 2017 show Plaintiff's situation to be one of continued decline and increased pain and complications.

25. In a note from Dr. Poczatek on August 24, 2017, Plaintiff was seen again for complaints of low back pain that radiated into his calf and foot on his left leg.

26. He also complained of episodic weakness and experienced numbness and tingling while rating his pain as a 7/10.

27. Examination by Dr. Poczatek objectively confirmed the complaints.

28. An MRI performed several days later showed degenerative changes in his spine at L4-5 with arthritic changes at L5-S1 which explained the complaints and Dr. Poczatek's clinical observations.

29. Plaintiff was given a series of steroidal injections to treat the pain, but

the relief was temporary. When that pain intolerably interfered with Plaintiff's ability to safely work as a PT, he had to stop working.

30. Not long after he stopped, Plaintiff submitted to a functional capacity examination in which his complaints at that time were all confirmed and he was found to have no more than a "light" physical/exertional capability as of January 2018.

31. Lincoln Life correctly found that that time that Plaintiff could not return to his occupation as a PT and opened a short-term disability ("STD") claim.

32. Lincoln Life paid the short-term disability claim through the end of the STD period, then opened a claim for long-term disability ("LTD") benefits for Plaintiff and in a April 11, 2018 letter informed of the approval of that LTD benefit effective May 1, 2018 (based on a date of disability on October 31, 2017).

33. After this initial approval, Lincoln Life continued to find Plaintiff to be disabled through the initial 24-month period where his disability was measured under an "Own Occupation" standard and noted that the next available opportunity for a status change for Plaintiff would come with his "CID", or "change in definition", a term that refers to the "Any Occupation" disability definition that takes effect when the 24-month "Own Occupation" period ends.

34. As part of this monitoring, the completion of a "Transferrable Skills Analysis" (or "TSA") was suggested in a January 15, 2019 claim note to determine

whether there were any "alternate" occupations that Plaintiff if he was assessed as having sedentary or light physical demand capabilities.

35. Ostensibly in furtherance of this internal suggestion, Rebecca Gladman, a Vocational Rehabilitation Counselor with Lincoln Life, issued a TSA report on February 28, 2019 opining there to be three alternative occupations Plaintiff could pursue: (1) Relations Specialist; (2) Credit Analyst; and (3) Claims Adjudicator.

36. There were two fundamental problems with the foundation of her report, however. First, it did not take into account the correct occupational standard in the policy that was applicable to the Plaintiff because it ignored Plaintiff's age and other factors the policy's "Any Occupation" standard expressly includes. Second, it identified these occupations as being suitable for Plaintiff to undertake based on a "median" wage, not an entry-level wage which is what Plaintiff would have if he were able to change over into one of these occupations that was different from his own.

37. Around the same time of the completion of this initial TSA, the Social Security Administration informed Plaintiff that it found him to be disabled under its ruled (which similarly consider age and other factors found in Plaintiff's "Any Occupation" disability definition) and entitled to Social Security disability benefits ("SSDI").

38. Plaintiff, in turn, informed Lincoln Life of this fact on or about March 2019.

39. After receiving Plaintiff's Notice of Award for SSDI, Lincoln Life informed Plaintiff in an April 16, 2019 letter that it had calculated that he had been overpaid LTD benefits up to that point by $23,245.00 and it required the recovery of that amount from the Plaintiff as soon as practicable.

40. Plaintiff, acknowledging this obligation under the Plan, responded to this notice by quickly resolving the overpayment in full with an immediate payment.

41. In June 2019, after discussing with Plaintiff his condition and inability to return to work in any capacity, Lincoln Life began a "formal CID investigation" into whether Plaintiff would meet the "Any Occupation" disability standard as of April 30th of the following year (that being the end of the first 24 months of LTD benefits).

42. Over the next several months, Lincoln Life regularly checked in with the Plaintiff about updates and sought current medical records.

43. As the CID date drew near, Lincoln Life commissioned a second internal TSA, this time with Vocational Rehabilitation Counselor Lori Ashworth.

44. Ms. Ashworth's TSA suffered from the same systemic flaws as Ms. Gladman's that had preceded hers. Specifically, she did not consider – and was not asked to consider – Plaintiff's age or what the entry level-median income for

available occupations would be.

45.     After the completion of this identically flawed TSA, in a dated April 23, 2020, LTD Technical Specialist Brandy Pelletier, on behalf of Lincoln Life, informed that her claims unit was terminating and closing Plaintiff's LTD claim.

46.     In addition to relying on a flawed vocational analysis in the form of the above-referenced TSA, that decision was also suspect because in assessing Plaintiff's functional deficits it outwardly credited its review of Plaintiff's medical records over the professional clinical observations and conclusions of Plaintiff's physicians who had interacted with, observed, evaluated and assessed Plaintiff in person.

47.     Plaintiff, through counsel, appealed this claim termination in a letter dated October 14, 2020 sent via facsimile and certified mail.

48.     In this appeal, Plaintiff challenged the vocational determination in particular, noting that the Vocational Specialist who performed the analysis leading to this claim termination overtly failed to consider Plaintiff's "age, physical and mental capacity," or the remaining qualifiers for this Plan's "any occupation" disability definition.

49.     Plaintiff noted that this failure to render a complete opinion, when cast against (1) Plaintiff's vocational evaluation that was part of his Social Security disability determination (where these factors are likewise considered), was arbitrary

and capricious decision-making, because the only vocational evaluation before Lincoln Life that included an assessment of these factors supported a finding of total disability, yet Lincoln Life ignored that uncontroverted evidence.

50. Further, Lincoln Life's vocational review examined other occupations using a median income standard instead of an entry level standard. The entry level pay for the occupations Lincoln Life has identified for Plaintiff – (1) Inservice Coordinator, Auxiliary Personnel; (2) Director, Volunteer Services; (3) Supervisor, Volunteer Services; and (4) Health Services Coordinator -- are <u>below</u> the minimum level of pay the Plan requires; therefore, these selected occupations do not meet policy terms as to Plaintiff.

51. Plaintiff also challenged Lincoln Life's determination on Plaintiff's functional limitations by submitting a report from an Independent Medical Examiner who found Plaintiff's pain levels to be incompatible with meeting the demands of any fulltime employment because of there being a reasonable need and probability of excessive absences from work.

52. The fax transmission report for Plaintiff's October 14, 2020 appeal letter confirms Lincoln Life's receipt of the letter that same day, while the return receipt for the certified mailing confirmed Lincoln Life received the mailed version of the appeal on October 19, 2020.

53. In a letter dated November 11, 2020, Lincoln Life acknowledged

receipt of Plaintiff's appeal on October 14, 2020 and in accordance with the policy and Department of Labor regulation requirements promised a decision within 45 days.

54. On November 12, 2020, Plaintiff Counsel, after receiving a copy of Plaintiff's SSDI record from the SSA, sent to Lincoln a copy of that SSDI record as Lincoln Life's letter the previous day invited him to do.

55. The cover letter that went with the submission was sent via facsimile that same day, while the copy of the SSA record was sent on a CD with the certified mailing of that letter.

56. On November 16, 2020, Lincoln Life acknowledged Plaintiff Counsel's provision of Plaintiff's SSA record and that the actual record itself had been mailed and informed that Lincoln Life, as of that date, had not yet received that mailing. Citing this circumstance, Lincoln Life informed that it was tolling its time for issuing a decision on Plaintiff's appeal until it had received that record sent with Plaintiff's certified mailing.

57. Lincoln Life thereafter received Plaintiff's SSA record through the mail on November 18, 2020, as confirmed by return receipt for that certified mailing.

58. No further communication was received from Lincoln Life on Plaintiff's appeal until December 29, 2020, when Lincoln Life advised that it had obtained "new/additional evidence" for Plaintiff's claim and provided two new

medical records reviews and a new TSA dated December 28, 2020 that had not been previously provided to Plaintiff.

59. On January 11, 2021, Plaintiff, through counsel, responded to Lincoln Life's December 29, 2020 letter and failure to render a claim decision within the time it had promised.

60. On Lincoln Life's failure to render a claim decision, Plaintiff Counsel noted that Lincoln Life's deadline for deciding the claim had already passed as of November 30, 2020, a date which took into account Lincoln Life's tolling it had announced on November 16, 2020 while awaiting receipt of the SSA record.

61. Plaintiff Counsel further noted that the new reviews Lincoln Life had provided therefore related to an appeal that already had been denied by operation of law as of November 30, 2020.

62. Finally on this issue, Plaintiff expressly invited Lincoln Life's response to Plaintiff's calculation of its deadline having long since passed to ascertain whether it had a different view that Plaintiff had not fully considered. As part of this invitation, Plaintiff asked that Lincoln Life respond by January 14 with whatever contrary views it may have had on this issue.

63. As to the substance of Lincoln Life's "new/additional evidence," Plaintiff Counsel noted that Lincoln Life had still failed to address the issues raised in the original appeal relating to Lincoln Life TSAs ignoring what the policy actually
13

requires. Plaintiff Counsel also noted that the TSA provided similarly did not consider Plaintiff's Social Security disability finding, which was directly relevant to the claim given the similarities in requirements.

64. Lincoln Life also had not asked its vendors who had written the reports attached to its letter to Plaintiff to consider Plaintiff's pain, which is a significant factor in Plaintiff's inability to maintain fulltime gainful employment.

65. Lincoln Life did not respond to that letter, other than to issue an out-of-time *post hoc* statement of reasons why it would not revisit, or even visit at all, the grounds Plaintiff's appeal raised.

66. Lincoln's administration of this claim involves numerous other regulatory and plan breaches and errors, including:

   (a) The failure to maintain adequate claims procedures, or any procedures *at all*, in compliance with Department of Labor regulations;

   (b) The targeting of Plaintiff's claims for denial because ERISA governs;

   (c) The failure by Lincoln to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(d)  The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of his claim;

(e)  Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all his claim;

(f)  Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(g)  Failing to accord any weight to Plaintiff's medical providers and other examiners who personally examined the Plaintiff, some on a regular basis;

(h)  Failing to give proper consideration to Plaintiff's Social Security disability determination in accordance with Eleventh Circuit precedent, especially in light of the similarity of the SSA's standard to the Lincoln Life "Any Occupation" standard;

(i)  Failing to issue a timely decision as required under Plan terms and Department of Labor regulations; and

(j)  Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how his conditions impacted one another.

67. Despite Plaintiff's established disability and entitlement to coverage under the terms of the LTD Plan, Lincoln Life continues to consider Plaintiff not to be "disabled" and unqualified for LTD benefits.

68. As set forth above in connection with Lincoln Life's fiduciary breaches, Lincoln Life's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

69. This conflict of interest further calls into question the credibility of Lincoln Life's claims personnel and reviewers who behaved dishonestly and who openly defied Plan terms and department of labor regulations.

70. Lincoln Life considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision.

71. Lincoln Life did not provide Plaintiff with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1, and instead actively tried to subvert Plaintiff's ability to protect his right to such a review.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gary Caddell respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

a. For an order awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b. For a judgment against the Defendant awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c. For an order requiring Defendant to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d. Such other relief as may be deemed just and proper.

Respectfully submitted,

*/s/ David P. Martin*

David P. Martin (ASB-3500-M68D)
M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
david@erisacase.com
clay@erisacase.com

**Plaintiff's Address:**

Gary Caddell
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

## REQUEST FOR SERVICE BY CERTIFIED MAIL

Please serve the defendants **Lincoln Life Assurance Company of Boston** by certified mail pursuant to Federal Rules of Civil Procedure 4(e)(1).

*/s/ David P. Martin*

David P. Martin
(ASB-3500-M68D)

18